

Villanova University School of Law
Villanova University School of Law Digital Repository

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-9-2009

# Ngoy v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1144

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Ngoy v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1560.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1560

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1144
_____

MONGA WAMUNDA NGOY,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96-207-248)
Immigration Judge: Honorable Robert P. Owens

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 8, 2009
Before: BARRY, SMITH and HARDIMAN, Circuit Judges

(Opinion Filed: April 9, 2009)
_____

OPINION
_____

PER CURIAM

Monga Wamunda Ngoy petitions for review of the Board of Immigration

Appeals' ("BIA") final order of removal.  For the following reasons, we will deny her

petition.

I.

Ngoy is a native and citizen of the Democratic Republic of the Congo. She arrived in the United States in 1996 on a student visa and was placed in removal proceedings in 2004 for failure to maintain her student status. She concedes removability, but applied for withholding of removal and relief under the Convention Against Torture ("CAT"). She initially sought asylum as well, but her asylum application was untimely and she withdrew it.

Before the Immigration Judge ("IJ"), Ngoy claimed that she suffered past persecution and faces future persecution on the basis of her political opinion and membership in a particular social group, though she never defined either with any particularity. Her claim of past persecution is based on two incidents. Both incidents relate primarily to her father, who, during the reign of the previous President Mobutu, was the Chief Executive Officer of a company owned partly by the Congolese government. In the first incident, approximately 100 unpaid soldiers and others invaded Ngoy's family's home in Kinshasa during an attempted coup d'etat in 1993. The invaders ate all their food and ransacked and set fire to their house, but Ngoy was not home at the time and her family was not physically harmed. Ngoy believes their home was targeted because her father was wealthy and was associated with the government. In the second incident, which Ngoy characterizes as an assassination attempt, someone dropped a large

2

rock on her father's office chair at his place of business (he was not there at the time and was not harmed). She believes that someone in the Congolese government was trying to kill him because he had fallen out of favor after refusing to participate in a scheme to extort money from his company.

Regarding future persecution, Ngoy testified that she fears she will be imprisoned and raped if returned to the Congo because "the same people who were involved in the incident in 1993" are in power now. (A.112.)[1] She also apparently fears mistreatment from the populace because it believes that the government is stealing money from the people and assumes that her father became wealthy through corruption and his membership in the ruling tribe. (A.111, 140.) Ngoy testified that she remained in the Congo without harm for approximately three years after the 1993 looting of her family home. She also testified that her parents remain in Kinshasa and, after living in a different house until approximately 1998, have lived in the same house that was looted ever since. She testified that they have received various anonymous threats over the years but have never been harmed, and she did not testify that she herself had ever been threatened or that her parents had received threats directed toward her. In addition to her testimony, Ngoy presented the testimony of her sister and numerous articles and country

---

[1] By way of background, former President Mobutu fled the country in May 1997, at which time Laurent-Desire Kabila declared himself president. He was assassinated in 2001, and was succeeded by his son, Joseph Kabila. (A.215-16.) Ngoy's family is of the Moluba tribe, the same tribe as the Kabilas. (A.111.)

reports regarding conditions in the Congo.

The IJ found Ngoy and her sister credible, but denied her claims for withholding of removal and relief under CAT. The IJ noted that Ngoy had not precisely defined her political opinion or social group, but construed her claimed social group as "members of the Moluba tribe whose parents were high officials or wealthy officials in the Congo." (IJ Dec. at 5.) The IJ did not specifically discuss whether Ngoy had suffered past persecution. Instead, he concluded that she had not shown a likelihood of future persecution or torture because (1) she presented no evidence that she was ever threatened or would be singled out, (2) she remained in Congo without harm for three years following the looting and burning of her family home, and (3) her parents have remained in the Congo without harm ever since. On appeal, the BIA adopted the IJ's decision and also explained that the looting and burning of Ngoy's family home did not constitute past persecution of Ngoy. Both the IJ and BIA granted voluntary departure. Ngoy seeks review.[2]

II.

---

[2] We have jurisdiction under 8 U.S.C. § 1252(a)(1). Our review extends only to the BIA's decision but, because the BIA both adopted the IJ's decision and provided its own analysis, we review the reasoning of both. See Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). We review the BIA's factual findings for substantial evidence and must treat them "as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Sioe Tjen Wong v. Att'y Gen., 539 F.3d 225, 230 (3d Cir. 2008) (citations omitted). We have plenary review over its conclusions of law, subject to established principles of deference on agency review. See id. at 231.

On review, Ngoy has expressly waived her CAT claim and concedes that she is ineligible for asylum. Thus, we review only her claim for withholding of removal. An applicant for withholding of removal bears the burden of showing that she more likely than not will be subjected to persecution on one of the five statutorily-protected grounds if returned to her home country. See Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003). An applicant's persecution in the past raises a rebuttable presumption that she is likely to be persecuted in the future. See Wang v. Gonzales, 405 F.3d 134, 139 (3d Cir. 2005). While the persecution also must be at the hand of a government or of forces that it is unable or unwilling to control, see Mulanga, 349 F.3d at 132, and Ngoy's claims implicate that requirement, neither the IJ nor BIA discussed that issue so we may not reach it in the first instance. See INS v. Ventura, 537 U.S. 12, 16 (2002).[3]

Ngoy raises two arguments in her brief. First, she argues that the BIA erred in concluding that the looting and burning of her family home did not constitute past persecution, and thus erred and denied her due process by not presuming that she was likely to suffer persecution in the future. The BIA reasoned that, although the burning and looting was a "regrettable event, [Ngoy] herself was not at home at the time, and she

_____

[3] The BIA wrote that Ngoy failed to demonstrate past persecution "and" a likelihood of future persecution. (BIA Dec. at 1-2.) It is clear, however—both from the BIA's reasoning and its adoption of the IJ's decision, which sets forth the correct standard (IJ Dec. at 2-3)—that the BIA concluded that Ngoy had failed to establish past persecution "or" a likelihood of future persecution. Ngoy does not argue that the BIA applied the wrong standard in this regard.

5

herself did not experience any direct harm[.]" (BIA Dec. at 1.) We agree that, because Ngoy suffered no direct harm as a result of that incident, it cannot constitute past persecution of her even if it rises to the level of persecution of her parents. See Wang, 405 F.3d at 142-144 (explaining why child could not be deemed to have been persecuted where mistreatment, including destruction of family home, was directed only at parents and the child suffered no direct harm rising to the level of persecution). Ngoy argues that the burning of the family home was directed at her because it was an attempt to kill her entire family. There is no record support for that argument. In any event, Ngoy herself was not harmed, and thus cannot be said to have been persecuted. See id.

Second, Ngoy argues that the BIA erred in concluding that she had not shown a likelihood of future persecution in the Congo. Both the IJ and BIA denied this claim because (1) although Ngoy's father had received threats, there was no evidence that the threats were directed at her, (2) she remained in the Congo without harm for three years after the 1993 incident, and (3) her parents have remained in the Congo without harm ever since.

Ngoy challenges only the BIA's reliance on the last of these points. Ngoy does not dispute that the lack of harm to remaining family members generally is relevant on the issue of future persecution (Petr.'s Br. at 25), as it is under these circumstances. Cf. Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no individualized showing

6

that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished."). Instead, she attempts to distinguish her situation from that of her father by arguing that he is "no longer a public figure" and "stays in private with his wife and mother," while she "as a young female could not reasonably be expected to remain so cloistered." (Petr.'s Br. at 26.)

But Ngoy does not argue, and presented no evidence, that her remaining family is in hiding and has escaped persecution only because the government has been unable to locate them. Cf. Toure v. Att'y Gen., 443 F.3d 310, 319 (3d Cir. 2006). To the contrary, she testified that her parents and grandmother have, since 1998, lived in the same house that was looted in 1993. Nor does Ngoy argue that her claim is based on any immutable characteristic not shared with her parents or that she otherwise would be singled out for mistreatment. However her political opinion or social group might be defined—perceived allegiance to the Mobutu regime, or to the Kabila regime, or membership in the Moluba tribe, or her family's wealth, or some combination thereof—she shares all potentially-relevant characteristics with the family members who have remained without harm. Accordingly, the BIA did not err in basing its decision on that consideration.

Ngoy also has not identified any evidence of record that compels a contrary decision, and we have located none. In particular, Ngoy has presented no evidence that compels the conclusion that she will be arrested, imprisoned and raped on return to the

7

Congo as a result of her political opinion, membership in a particular social group, or on any other statutorily-protected ground. Accordingly, the petition for review will be denied.[4]

---

[4] Ngoy appears to argue that, as a woman, she might be singled out because she is susceptible to rape. The articles and reports of record describe the pervasive use of rape as a weapon of war in certain areas of the Congo and recount events that can be described only as horrific. We are not unfamiliar with these conditions. See Zubeda v. Ashcroft, 333 F.3d 463, 467-68 (3d Cir. 2003). As the IJ noted, however, Ngoy does not claim that her mother has been raped, and she has presented no evidence compelling the conclusion that she will be singled out for rape on account of a statutorily-protected ground (or for any other reason). We sympathize with Ngoy and understand her reluctance to return to the Congo, but she bore the burden of proving that persecution on her return is more likely than not. The BIA properly relied on evidence of record in concluding that she had not met that burden, and the record does not compel a contrary conclusion.